UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
            :
**NAJI-ULLAH HENTON**,            :
            :
                                Plaintiff,            :
            :       **MEMORANDUM DECISION AND**
            :       **ORDER**
– against –            :
            :       24-CV-2270 (AMD) (LKE)
            :
**CITY OF NEW YORK; OFFICER**            :
**GABRIELLE GRANSTON; OFFICER**            :
**JOHANNE SAINT JEAN; LIEUTENANT**            :
**ANDREA BODEN; UNIDENTIFIED**            :
**OFFICERS OF THE NYPD;** and **THE NEW**            :
**YORK CITY POLICE DEPARTMENT**,            :
            :
                                Defendants.            :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff alleges violations the Fourth Amendment and Article I § 12 of the New York State Constitution, and also brings New York state tort claims. Before the Court is the defendants' motion to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the defendants' motion is granted.

## BACKGROUND

On December 12, 2022, the plaintiff went to the "New York City Transit District 23 Headquarters"[1] to "retrieve his personal property." (ECF No. 1 ¶¶ 11–12.) The officer at the front desk, Johanne Saint Jean, gave the plaintiff a bag containing his belongings. (*Id.* ¶¶ 12–13.) The plaintiff inspected the bag and noticed that "2 phone chargers [were] folded

---

[1] Transit District 23 is a police station in Rockaway Park, Queens. *See* New York Police Dep't, Transit District 23, https://www.nyc.gov/site/nypd/bureaus/transit-housing/transit-district-23.page (last visited July 9, 2023).

improperly" and that his "safety knife was not included." (*Id.* ¶¶ 13, 16.) The plaintiff asked Lieutenant Andrea Boden for his knife; she replied that "it was taken for evidence." (*Id.* ¶ 17.)

Shortly thereafter, Officer Saint Jean "demanded" that the plaintiff leave. (*Id.* ¶ 18.) The plaintiff responded that he would leave "once [his] business . . . [was] done." (*Id.*) At that point, Officer Gabrielle Granston "picked up [the plaintiff's] personal property . . . and demanded [that he] leave." (*Id.* ¶ 22.) When the plaintiff did not comply, Officer Granston "grabbed" his left forearm and "started using force to pull it." (*Id.* ¶ 23.) The plaintiff "raised both of his hands in the air quickly as a method of de-escalation," but additional unidentified officers (the "Doe Officers") "rushed towards" the plaintiff and, with Officers Granston and Saint Jean, "forced him against the glass wall behind him" and "grab[bed] and twist[ed]" his "body parts." (*Id.* ¶¶ 24–26.) Officer Granston told the plaintiff that he was "under arrest," which the plaintiff "did not resist." (*Id.* ¶ 27.) Officer Granston and the Doe Officers took the plaintiff "to the front desk and searched about his persons." (*Id.* ¶ 28.) The plaintiff alleges that "his personal property was taken" and he was "stripped from his clothing." (*Id.*)

Next, officers took the plaintiff to a holding cell where he was "denied any phone call [or] food" and his request for medical treatment went unanswered. (*Id.* ¶¶ 29–30.) He was released the next morning. (*Id.* ¶ 31.)[2] The plaintiff was subsequently charged with trespass, in violation of New York Penal Law § 140.05, and criminal trespass in the third degree, in violation of New York Penal Law § 140.10A. (*Id.* at 13.) The charges were dismissed on March 8, 2023. (*Id.*)

---

[2] Attached to the complaint is a "Personal Injury Claim Form" filed with the New York City Comptroller. (*Id.* at 6–12.) The form includes a factual description of the events of December 12, 2022, which mirrors the allegations in the complaint. (*Id.* at 8–9.)

The plaintiff commenced this action on March 12, 2024. (*Id.* at 1.) On September 12, 2024, the defendants moved to dismiss the complaint. (ECF No. 29.)[3]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) challenge, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although a plaintiff need not set forth "detailed factual allegations," a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. When faced with a Rule 12(b)(6) motion, the Court "accept[s] all factual allegations in the complaint as true and draw[s] all inferences in the plaintiff's favor." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

The Court "liberally construe[s]" a *pro se* complaint and evaluates it by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also McCray v. Lee*, 963 F.3d 110, 116–17 (2d Cir. 2020). The plaintiff's claims must be "read to raise the strongest

---

[3] On May 30, 2025, the plaintiff requested a certificate of default as to all defendants, on the grounds that they did not "answer or otherwise move with respect to the complaint." (ECF No. 38 at 4.) However, the defendants timely filed a Rule 12(b)(6) motion to dismiss, which satisfies their obligation to "defend" the action under Federal Rule of Procedure 55(a).

3

arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)).

## DISCUSSION

The plaintiff makes the following claims: that Officer Granston and the Doe Officers subjected him to an unreasonable search and seizure in violation of the Fourth Amendment (Counts I and II) and Article I § 12 of the New York State Constitution (Counts III and IV); that Officer Granston falsely imprisoned him in violation of the Fourth Amendment and Article I § 12 of the New York State Constitution (Count V); and that Officers Granston, Saint Jean and the Doe Officers committed assault and battery and "negligent involvement in unlawful arrest" in violation of state law (Counts VI, VII, VIII, and IX). (ECF No. 1 at 3–4.)

As explained below, the plaintiff does not state a claim in the federal causes of action and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

**I.    City of New York, Lieutenant Boden, and the New York Police Department**

As a threshold matter, the federal claims against the City of New York, Lieutenant Boden, and the New York Police Department must be dismissed because they are either non-suable or the complaint fails to allege their personal involvement.

First, as for the City of New York, the plaintiff does not assert in any of his claims that the City is responsible for the allegedly unconstitutional or tortious conduct. (*See id.* at 3–4.) Even if he did, a "municipal defendant 'cannot be held liable under § 1983 on a respondeat superior theory.'" *Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).[4] Nor does the plaintiff claim

---

[4] While the City can be held liable under a *respondeat superior* theory for the plaintiff's state law claims, *Brown v. State*, 89 N.Y.2d 172, 194 (1996), as explained below, the Court does not retain jurisdiction over those causes of action.

4

that the City is liable "for constitutional deprivations resulting from a governmental policy or custom." *Alwan v. City of New York*, 311 F. Supp. 3d 570, 577 (E.D.N.Y. 2018) (citing *Monell*, 436 U.S. at 694).

Second, the plaintiff does not adequately allege Lieutenant Boden's personal involvement in the conduct at issue. "[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). The only allegation concerning Lieutenant Boden is that she told him, in answer to his question, that his knife was "taken for evidence." (ECF No. 1 ¶ 17.) That is not enough to show that Lieutenant Boden was involved in any of the allegedly unconstitutional or tortious conduct. *Grullon*, 720 F.3d at 138; *see also Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 410 (S.D.N.Y. 2018) ("Courts have rejected the notion that every member of a team of officers is, by default, personally involved in every arrest effected by the team." (collecting cases)).[5]

Third, it is well-established that "the New York City Police Department is not a suable entity." *Denslow v. NYPD-77th Precinct*, No. 11-CV-384, 2011 WL 1348362, at *2 (E.D.N.Y. Apr. 8, 2011); *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("The district court correctly noted that the NYPD is a non-suable agency of the City."). The plaintiff names the NYPD only in the caption, but there is in any event no basis to hold the agency liable. For these reasons, the federal claims brought against the City, Lieutenant Boden, and the NYPD must be dismissed.

---

[5] To the extent that the plaintiff argues in his response that his knife was stolen and that Lieutenant Boden was partially responsible for that theft, the allegation is conclusory and insufficient to establish personal involvement. *See Twombly*, 550 U.S. at 555.

## II.     Fourth Amendment Claims (Counts I, II, and V)

The plaintiff, moving under 18 U.S.C. § 1983, brings two sets of Fourth Amendment claims: for false arrest against Officer Granston (Count V) and for unlawful search and seizure against Officer Granston and the Doe Officers (Counts I and II).  (ECF No. 1 ¶ 33–34, 37.)  As explained below, the plaintiff fails to state a claim under either theory.

### a.     False Arrest[6]

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  A Fourth Amendment "seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied."  *Williams v. Nat'l R.R. Passenger Corp. (Amtrak)*, 830 F. App'x 46, 47 (2d Cir. 2020) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007)).  "A warrantless arrest of an individual in a public place for a felony or a misdemeanor committed in the officer's presence is consistent with the Fourth Amendment, so long as the arrest is supported by probable cause."  *United States v. Herron*, 18 F. Supp. 3d 214, 221 (E.D.N.Y. 2014) (citing *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001)); *Virginia v. Moore*, 553 U.S. 164, 176 (2008) ("[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution.").

A Section 1983 claim for false arrest is "based on the Fourth Amendment['s]" prohibition against unreasonable seizures.  *Williams*, 830 F. App'x at 47.  Courts evaluating a false arrest claim "[look] to the law of the state in which the arrest occurred."  *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).  Under New York law, a plaintiff claiming false arrest must show that

---

[6] "In New York, the tort of false arrest is synonymous with that of false imprisonment."  *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (internal citation omitted).

6

"(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018) (citing *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)).  However, "[p]robable cause to arrest is a complete defense to an action for false arrest." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  Probable cause is determined based on the totality of the circumstances, *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983), and "exists if police 'officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested,'" *United States v. Cole*, 26 F. App'x 45, 46–47 (2d Cir. 2001) (quoting *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983)).

According to the complaint, Officers Saint Jean and Granston each asked the plaintiff to leave the precinct after Officer Saint Jean gave him his belongings.  (ECF No. 1 ¶¶ 18, 22.)  Both times, the plaintiff refused, and officers then arrested him for trespass, in violation of New York Penal Law § 140.05, and criminal trespass in the third degree, in violation of New York Penal Law § 140.10A.  (*Id.* at 13.)  Under New York Penal Law § 140.05, "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."[7]  "A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so." N.Y. Penal Law § 140.00(5).  A person who "enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful

---

[7] A person is guilty of criminal trespass in the third degree when he trespasses "in a building or upon real property . . . which is fenced or otherwise enclosed in a manner designed to exclude intruders," or one of the other locations enumerated under New York Penal Law § 140.10.

7

order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person." *Id.*  Thus, "to establish probable cause for arresting" the plaintiff for trespass, the defendants "must show that (1) there was a lawful order excluding Plaintiff from the property; (2) that the order was communicated to him by a person with authority to give the order; and (3) that [he] defied the order." *Yorzinski v. City of New York*, 175 F. Supp. 3d 69, 77 (S.D.N.Y. 2016) (citing *Carpenter v. City of New York*, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013)).[8]

The plaintiff admits that Officers Saint Jean and Granston ordered to leave him the police station (ECF No. 1 ¶¶ 18, 22), and the officers clearly had the authority to give that order.  *See People v. Jackson*, 46 Misc. 3d 142(A) (N.Y. Sup. Ct. Feb. 17, 2015) (upholding trespass conviction where the "orders communicated by the police to defendant . . . were lawful and, personally communicated to defendant by an authorized person").  The plaintiff did not obey Officer Saint Jean's order; instead, he said that he would "leave once [his] business [t]here [was] done." (ECF No. 1 ¶ 18.)  He also defied Officer Granston's order to leave.  (*Id.* ¶ 22.)  Thus, the complaint establishes the elements of trespass, and that Officer Granston had probable cause to arrest the plaintiff.  *E.g.*, *Omor v. City of New York*, No. 13-CV-2439, 2015 WL 857587, at *4 (S.D.N.Y. Feb. 27, 2015) (finding probable cause to arrest the plaintiff for trespass where he refused to leave a local government office that was open to the public after being asked to leave

---

[8] The Court does not address whether officers had probable cause to arrest the plaintiff for criminal trespass in the third degree, because it finds that Officer Granston had probable cause to arrest the plaintiff for trespass.

the premises by at least two office staff members). Accordingly, the plaintiff's false arrest claim is dismissed.[9]

### b. Unreasonable Search and Seizure

The plaintiff also alleges that he was subjected to an unreasonable search and seizure following his arrest. However, it is well-established that a search incident to arrest "constitutes an exception to the [Fourth Amendment's] warrant requirement." *Riley v. California*, 573 U.S. 373, 382 (2014). "So long as the initial custodial arrest is based on probable cause, authority to conduct such a search incident to that arrest does not turn on the probability that weapons or evidence will be discovered." *Herron*, 18 F. Supp. 3d at 223 (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973)); *see also United States v. Bell*, No. 19-CR-717, 2020 WL 370342, at *2 (S.D.N.Y. Jan. 22, 2020) ("The Second Circuit . . . has held that a search incident to arrest may be lawful . . . if there was probable cause to make the arrest." (internal quotation marks and citation omitted)). "A police officer may seize personal effects discovered during a search incident to arrest if the officers find that these are evidence of criminal conduct, even if unrelated to that for which a suspect had been arrested." *Herron*, 18 F. Supp. 3d at 223 (citing *Robinson*, 414 U.S. at 236); *see also Harding v. Gould*, No. 22-CV-6285, 2024 WL 3742688, at *7 (S.D.N.Y. Aug. 9, 2024) ("[T]he government's failure to return lawfully seized property is not an unreasonable seizure under the Fourth Amendment." (citing *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004))).

As explained above, there was probable cause to arrest the plaintiff for trespassing. Thus, Officer Granston and the Doe Officers were permitted to conduct a search incident to arrest

---

[9] The fact that the charges were ultimately dismissed does not change this result. *Soto v. City of New York*, 132 F. Supp. 3d 424, 454 (E.D.N.Y. 2015) ("New York courts have generally recognized that dismissal of an indictment does not negate the presumption of probable cause.").

9

without violating the plaintiff's Fourth Amendment rights. There is no constitutional violation even if the police did not return all of the plaintiff's property. *See Shaul*, 363 F.3d at 187 ("Where, as in this case, an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure.").

The plaintiff also alleges that "he was stripped from his clothing" before he was placed in a holding cell. (ECF No. 1 ¶¶ 28–29.) It does not appear that the plaintiff is claiming that he was strip searched. Even if he were, however, he could not prevail. Before police may conduct a strip search, they must have a "reasonable suspicion that a misdemeanor arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (cleaned up), *abrogation recognized on other grounds by, Murphy v. Hughson*, 82 F.4th 177, 185 (2d Cir. 2023). "A reasonable suspicion of wrongdoing is something stronger than a mere hunch, but something weaker than probable cause." *Id.* (quoting *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997)). To establish reasonable suspicion, law enforcement "must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience." *Id.* (internal citation omitted).

Before the plaintiff was arrested, he asked about his "safety knife." (ECF No. 1 ¶¶ 16–17.) After Lieutenant Boden told him that it was being held as evidence, the plaintiff refused two orders to leave. (*Id.* ¶¶ 17–18, 22.) The plaintiff's concern about the knife, and his refusal to comply with police directives to leave, could have established a "reasonable suspicion" that he

10

was concealing a weapon. Thus, a strip search — if it occurred — would have been permissible under the circumstances.[10]

### III. State Law Claims (Counts III, IV, V, VI, VII, VIII, and IX)

The plaintiff's remaining claims are brought either under the New York State Constitution (Counts III, IV, and V) or state common law (Counts VI, VII, VIII, and IX). A district court "may decline to exercise supplemental jurisdiction over a claim" if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 676 (2d Cir. 2009). Thus, in the absence of any remaining federal claims, the Court declines to exercise supplemental jurisdiction over the plaintiff's state law claims and dismisses them without prejudice.[11]

---

[10] Because the plaintiff does not state a claim under the Fourth Amendment, the Court does not address the defendants' qualified immunity arguments. (ECF No. 31 at 19–20.)

[11] The plaintiff's assault and battery claims could be construed as excessive force claims under the Fourth Amendment. *Rizk v. City of New York*, 462 F. Supp. 3d 203, 229 (E.D.N.Y. 2020). In assessing whether an officer's use of force was excessive, courts look to "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment," *id.* at 396 (internal citation omitted), and "a motion to dismiss an excessive force claim is appropriate if, accepting all of the allegations as true, it is clear that the force used by the officers was objectively reasonable under the circumstances," *Messina v. Mazzeo*, 854 F. Supp. 116, 128–29 (E.D.N.Y. 1994). The plaintiff alleges that after he refused to leave the police precinct, Officer Granston "grabbed [his] left forearm," "pull[ed] it" and "forced him against the glass wall," that the Doe Officers and Officer Saint Jean "grabb[ed] and twist[ed]" him, and that he later requested medical attention to "treat his previous and new injuries." (ECF No. 1 ¶¶ 23, 25–26, 30.) In light of the "facts and circumstances confronting" the defendants, *Graham*, 490 U.S. at 397, it was objectively reasonable that they used the amount of force described while arresting a person who had twice defied lawful orders to leave the precinct — particularly because the plaintiff does not allege a concrete, non-conclusory injury. *See Youngblood v. City of New York*, No. 15-CV-3541, 2016 WL 3919650, at *4

11

## CONCLUSION

For these reasons, the defendants' motion to dismiss is granted. The plaintiff's state law claims are dismissed without prejudice to renew in state court.

In an abundance of caution and in light of the plaintiff's *pro se* status, the Court grants him leave to amend the complaint. The plaintiff has thirty days to file an amended complaint, which must be captioned "Amended Complaint" and bear the same docket number as this order: 24-CV-270 (AMD) (LKE). The amended complaint completely replaces the original complaint. That is, the amended complaint must stand on its own without reference to the original complaint. All further proceedings will be stayed for thirty days. If the plaintiff does not file an amended complaint within the time allowed or show good cause for an extension to file the amended complaint, the Court will direct the Clerk of Court to enter judgment and close this case. The plaintiff may contact the City Bar Justice Center's Federal Pro Se Legal Assistance Project at (212) 382-4729 for free, confidential, limited-scope legal assistance.

The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to the plaintiff and to note the mailing on the docket.

---

(S.D.N.Y. June 27, 2016) ("Beyond the bare contention that Defendants used objectively unreasonable force resulting in physical and emotional injury, Plaintiff does not plead any facts describing . . . the nature of the force used or the injuries caused by that use of force."). Further, the defendants are very likely entitled to qualified immunity in this circumstance. *See Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (granting qualified immunity after determining "[i]t was objectively reasonable for [an officer] to believe that in pulling the plaintiff from the car to effect her arrest, he was not infringing on her Fourth Amendment rights").

**SO ORDERED.**

                                                      s/Ann M. Donnelly
                                          ANN M. DONNELLY
                                          United States District Judge

Dated: Brooklyn, New York
       July 9, 2025